**The below described is SIGNED.**

**Dated: August 07, 2008**

                          /s/ Judith A. Boulden
                          **JUDITH A. BOULDEN**
                          **U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>C.W. MINING COMPANY, a Utah corporation,<br><br>      Putative Debtor. | Case No. 08-20105<br><br>Chapter 11 |

**MEMORANDUM DECISION DENYING IN PART AND GRANTING IN PART MOTION OF AQUILA, INC. FOR ORDER PRESERVING AND PROTECTING ASSETS OF BANKRUPTCY ESTATE AND REQUESTING NOTICE AND HEARING IN CONNECTION WITH DEBTOR'S PURPORTED SALE OF SUBSTANTIALLY ALL OPERATING ASSETS TO A RELATED ENTITY**

Before the Court is the Motion of Aquila, Inc. (Aquila) for Order Preserving and Protecting Assets of Bankruptcy Estate and Requesting Notice and Hearing in Connection With Debtor's Purported Sale of Substantially All Operating Assets to a Related Entity (Motion). In the Motion, Aquila, a prepetition judgment creditor of the putative Debtor, C.W. Mining Company (Debtor), seeks an order: (1) prohibiting the Debtor from using, transferring, encumbering, or disposing of any of its assets outside the ordinary course of business without first obtaining this Court's approval; (2) requiring the Debtor to give notice to all parties in interest of

its efforts to sell and transfer all of its assets to a related entity; (3) prohibiting the Debtor from taking any action to transfer, terminate, assign, impair, or encumber the Debtor's long-term right to mine coal under an operating agreement (Coal Operating Agreement) between the Debtor and COP Coal Development Company (COP Coal); and (4) providing that if the Court approves a sale that the buyer Hiawatha Coal Company, Inc. (Hiawatha) pay into the Court's registry or an escrow account all consideration paid for the purchase of the Debtor's assets until further order of the Court. The Debtor and Standard Industries, Inc. (Standard Industries) oppose the Motion. An evidentiary hearing was held on August 1, 2008. At the hearing, Steve Strong and Keith Kelly appeared on behalf of Aquila, one of the petitioning creditors. Paul Toscano and Russell Walker appeared on behalf of the Debtor. Mark Hansen appeared on behalf of creditor Standard Industries, and Tyler Foutz appeared on behalf of petitioning creditor Owell Precast, LLC.

The parties have briefed the legal issues and presented evidence and argument to the Court. Following the evidentiary hearing, the matter was taken under advisement.[1] After considering the evidence, assessing the credibility of the witness, considering the arguments of counsel, and conducting an independent review of applicable case law, the Court makes the following ruling.

## I. FACTS

This involuntary chapter 11 case was filed on January 8, 2008 by three petitioning creditors: Aquila, House of Pumps, Inc., and Owell Precast, LLC. An order for relief has not been entered, and the involuntary petition is scheduled for trial in October 2008.

---

[1] After the Court took the Motion under advisement, Aquila filed a supplement to the motion. The Court has taken into consideration the facts and arguments presented in the supplemental pleading.

On October 30, 2007, before the involuntary case was commenced, Aquila obtained a money judgment against the Debtor in the United States District Court for the District of Utah (District Court).  On December 19, 2007, the District Court entered a Supplemental Order in Aid of Enforcement of Judgment (Supplemental Order).  The Supplemental Order states: "Given the size of the judgment and given the transfer of interest by CWM noted in the deposition of CWM's president Charles Reynolds, there is significant risk that CWM will attempt to transfer its assets to prevent Aquila from executing and recovering its damages."  The District Court went on to order that "CWM shall preserve its assets and not transfer or dispose of its assets other than in the ordinary course of business; provided, however, CWM may sell assets for the purpose of making its payroll after giving one week's advance notice to Aquila before such sale occurs."  The Supplemental Order also precludes CWM from taking "any action that may result in the termination of its Coal Operating Agreement ("Lease") with COP Coal Development Co ("COP"), dated March, 1997. . . ."  The involuntary petition was filed shortly after the Supplemental Order was entered.

The testimony of Mr. Charles Reynolds (Reynolds), the president of the Debtor, established that the Debtor entered into a Purchase and Sale Agreement (Sale Agreement) with Hiawatha sometime in June 2008.  Under the terms of this Sale Agreement, the Debtor sold or is in the process of selling substantially all of its operating assets to Hiawatha.  Section 3 of the Sale Agreement provides: "The full purchase price, except for the amount due in accordance with § 1.02 above, shall be payable at closing, in cash or by the assumption of indebtedness to secured creditors, as determined in accordance with §§ 1.01, 1.04, 1.05, and 1.06 above."  It appears that Hiawatha has purchased the assets of the Debtor through an assumption of liabilities only.  There

is no evidence that Hiawatha has paid the Debtor any cash in conjunction with the sale. Aquila's judgment debt is not one of the debts assumed by Hiawatha. Reynolds is now employed by Hiawatha, and most of the miners once employed by the Debtor are now employed by Hiawatha.

## II. JURISDICTION

The Debtor has argued that this Court lacks both subject matter and personal jurisdiction over the Debtor and its assets. The Court disagrees with this conclusion. Pursuant to the Bankruptcy Code, the Court obtained jurisdiction over the Debtor and its 11 U.S.C. § 541 property[2] at the time the involuntary petition was filed with the Court. The fact that the Debtor is contesting the involuntary filing does not divest the Court of its subject matter jurisdiction. This Court has stated: "The filing of a petition sufficient on its face clearly gives the bankruptcy court jurisdiction over an involuntary case."[3] Therefore, the Court finds that its jurisdiction is proper under 28 U.S.C. §§ 1334 and 157(a). This Court also has personal jurisdiction over the Debtor based on proper service of the involuntary petition pursuant to Rule 1010 of the Federal Rules of Bankruptcy Procedure (Bankruptcy Rules). Further, the Court finds that this is a core matter under 28 U.S.C. § 157(b), and this Court may make a final determination.

---

[2] *See* 11 U.S.C. § 541(a) which provides: "The commencement of a case under section 301, 302, or 303 of this title creates an estate." All future statutory references are to title 11 of the United States Code unless otherwise indicated.

[3] *In re Alta Title Co.,* 55 B.R. 133, 137 (Bankr. D. Utah 1985) (Clark, J.) (stating that "[w]hile some courts have labeled the three petitioning creditor requirement 'jurisdictional,' this requirement is not jurisdictional in the sense of subject matter jurisdiction, but is a substantive matter which must be proved or waived if put in issue").

### III. SECTIONS 362(a)(2) AND 303(f)

Aquila argues, among other things, that the Debtor has violated the Supplemental Order by transferring its assets to Hiawatha and that this Court should grant the relief sought in its Motion and also declare the sale reflected in the Sale Agreement void. In response, the Debtor contends that it entered into the Sale Agreement merely to preserve the Debtor's assets in an attempt to comply with the Supplemental Order[4] and that § 303(f) gives it the ability to sell its assets without notice to parties in interest and without Court approval until an order for relief is entered. The parties agree that § 303 governs this issue. Subsection (f) of § 303 provides: "Notwithstanding section 363 of this title, except to the extent that the court orders otherwise, and until an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." Therefore, during this "gap" period, the Debtor has the ability to continue to use, acquire, or dispose of property inside or outside the ordinary course of business without notice to parties in interest or Court approval unless the Court orders otherwise. Aquila argues, however, that § 303(f) excuses an involuntary debtor's compliance with § 363(b) during the gap period only to the extent the debtor would be authorized outside of bankruptcy to make such transfers. Aquila maintains that this Debtor was not authorized to enter into the Sale Agreement without complying with § 363 because doing so was a violation of the Supplemental Order. In response, the Debtor argues that Aquila fails to take into account other applicable provisions of the Bankruptcy Code that impact this involuntary

---

[4] Because resolution of the Motion turns on an interpretation of the Bankruptcy Code, it is unnecessary for the Court to resolve various disputed issues of fact. But the Court notes in passing the incongruity of arguing that transferring assets of a company preserves those assets for the company.

filing, namely the automatic stay provisions of § 362.

When an involuntary petition is filed under § 303 of the Bankruptcy Code, the automatic stay goes into effect precluding parties from taking various actions against a debtor or property of the estate. Specifically, § 362(a)(2) stays "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."[5] It is undisputed that Aquila obtained its judgment against the Debtor before the involuntary petition was filed. The Court also concludes that the Supplemental Order was issued to aid Aquila in its attempt to collect on its judgment pursuant to Fed. R. Civ. P. 69, DUCivR 69-1, and Utah R. Civ. P. 64. The question that remains then is this: what is the effect of the automatic stay on this Supplemental Order?

When a petition for bankruptcy relief is filed the stay makes a prepetition judgment unenforceable without further order of the court.[6] This is the case even when a supplemental order issued in an attempt to enforce the judgment contains restrictive or injunctive-like language. DUCivR 69-1(a), under which the Supplemental Order was issued, specifically provides that "[t]he moving party, on proper affidavit, may request that the debtor or other person be ordered to refrain from alienation or disposition of the property or assets in any way detrimental to the moving party's interest." This is exactly what the Supplemental Order did. It restrained the

---

[5] *See In re Weitzman*, 381 B.R. 874, 882 (Bankr. N.D. Ill. 2008) (denying creditor's request to sue chapter 13 trustee in non-bankruptcy forum and stating that creditor's attempt to collect prepetition judgment against chapter 13 trustee and estate property held by that trustee was not permitted by the automatic stay). The bankruptcy court in *Weitzman* wrote: "The stay prevents, among other actions, the enforcement of a prepetition judgment against the debtor or property of the estate. 11 U.S.C. § 362(a)(2). In other words, when the automatic stay is in effect, prepetition judgments are incapable of enforcement." *Id.*

[6] *See* §362(a)(2).

Debtor, prepetition, from using or disposing of its assets outside the ordinary course of business and from taking any actions that may result in the termination of its Coal Operating Agreement with COP Coal. When the automatic stay went into effect, the October 2007 judgment and any orders supplemental thereto became unenforceable without first seeking relief from the provisions of the automatic stay. In voluntary cases, other provisions of the Code such as § 363 would replace the injunctive provisions of the Supplemental Order and give statutory structure to transactions involving § 541 property. But to enforce the Supplemental Order post-petition in this unadjudicated involuntary case, Aquila was required to move to either lift the § 362 stay to continue to enforce the Supplemental Order, or to immediately file its § 303(f) motion for the Court to "order otherwise" and restrict the Debtor's unfettered use of its assets.[7]

The Court recognizes that ruling that the automatic stay prevents enforcement of a prepetition injunctive or restraining-type order could result in "a parade of horribles," but the Bankruptcy Code provides exceptions to the application of the automatic stay that deal with this potential parade. Section 362(b) provides for at least twenty-eight scenarios where the stay does not go into effect. The Supplemental Order does not fit into any one of the twenty-eight exceptions. As a result, the Supplemental Order is subject to the automatic stay, and this Court cannot enforce it to prevent the transfer that has already occurred.

Although there is very little case law directly on point, the bankruptcy court in *In re Weitzman* was presented with the following scenario. During the pendency of a debtor's chapter

---

[7] The legislative history of § 303(f) indicates that imposition of restrictions on a putative debtor may be appropriate when the debtor intends to conceal, dispose, or abscond with estate assets in a manner that would be detrimental to the debtor's creditors. *See* S. Rep. No. 989, 95th Cong., 2d Sess. 33, reprinted in 1978 U.S. Code Cong. & Admin. News 5787, 5819.

13 case, a prejudgment creditor issued a third-party citation to the chapter 13 trustee ordering the trustee to appear before the state court to answer questions regarding any assets of the debtor in the trustee's control, and the citation prohibited the trustee from transferring any portion of the debtor's non-exempt assets. The court found that the prepetition judgment could not validly support the commencement of a supplemental proceeding because § 362(a)(2) prohibited such actions.[8] As articulated in *Weitzman*, the automatic stay prohibits any attempt to use a supplemental proceeding or a supplemental order to enforce a prepetition judgment.[9] As a result, the automatic stay prohibited the enforcement of the Supplemental Order at the time the Sale Agreement was executed.

This analysis may frustrate Aquila's attempted collection of its prepetition judgment. Under § 303, Aquila could have come before this Court and asked it to require the Debtor to comply with § 363 and other provisions of the Code before the adjudication of the involuntary or to appoint an interim trustee but it failed to do so.[10] Aquila's delay in bringing the Motion allowed the filing of the involuntary petition to shield the Debtor from the consequences of the Supplemental Order with no commensurate obligations on the Debtor's part to protect and

---

[8] *Weitzman*, 381 B.R. at 882. Under Illinois law, a judgment creditor can initiate supplemental proceedings to discover the assets of a judgment debtor. Both the judgment debtor and any third party that might hold the debtor's assets are subject to this citation. The citation may include "restraining provisions" which keep the judgment debtor or a third party from disposing of the assets. DUCiv. R 69-1(a) has a similar provision which allows the District Court to issue an order requiring the debtor to refrain from alienating or disposing of the property or assets in any way detrimental to the creditor who is attempting to collect its judgment.

[9] *See also Galmore v. Dykstra (In re Galmore)*, no. 07-2205 JPK, 2008 WL 2879680 at *8, ___ B.R. ___, (Bankr. N.D. Ind. July 25, 2008) (holding that a bench warrant, used postpetition by a creditor to have the debtor arrested, was civil in nature and subject to § 362(a)(2)).

[10] *See In re Professional Accountant Referral Services, Inc.,* 142 B.R. 424 (Bankr. D. Colo. 1992) (holding that an interim trustee can be appointed during the gap period).

preserve assets of the estate. This may not be what Aquila and the other petitioning creditors intended when they filed the involuntary petition, but it is the result nonetheless. The Bankruptcy Code simply says what it says, and this Court cannot change that fact.

The Court will, however, pursuant to § 303(f), order that from this point forward any use, transfer, or disposition of any of the Debtor's assets outside the ordinary course of the Debtor's business is subject to the provisions of § 363 of the Bankruptcy Code. If the Debtor wants to transfer, sell, or seek approval of the transfer or sale of its assets to Hiawatha or any other party outside the ordinary course of the Debtor's business, a motion must be filed, set for hearing, and properly noticed out to all parties pursuant to the Bankruptcy Code and Bankruptcy Rules. This order applies to any portion of the Sale Agreement or any other post-petition transfer that has not yet been consummated including the approval of the sale by various governmental agencies and regulatory agencies or commissions.

Standard Industries argued that any order of this Court that restricts or restrains the Debtor from operating or transferring its assets should be obtained through an adversary proceeding pursuant to Rule 7001. Under Rule 7001, an attempt to obtain an injunction or other equitable relief requires the commencement of an adversary proceeding.[11] The relief granted in this order, however, is not an injunction or other equitable relief as contemplated by Rule 7001. In "ordering otherwise," the restrictions this Court is imposing on the Debtor's future transfer, use, or disposition of assets outside the ordinary course of business, or its attempts to take any action in furtherance of the consummation of the Sale Agreement, are authorized by § 303(f)

---

[11] *See* FED. R. BANKR. P. 7001 which provides: "An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings: . . . (7) a proceeding to obtain an injunction or other equitable relief . . . ."

which allows this Court to "prevent a debtor from controlling an asset [or assets] during the 'gap period' between the filing of the involuntary petition and the entry of an order for relief."[12] Requiring the Debtor to comply with the provisions of § 363, Rule 6004, and Rule 2002 when taking steps to act outside the ordinary course of business is not akin to an injunction and does not require the commencement of an adversary proceeding.

## IV.   CONCLUSION

Before the involuntary bankruptcy petition was filed, the relationship between the Debtor and its creditor Aquila was governed by the District Court, the October 2007 judgment, and the Supplemental Order.  But when the petitioning creditors filed the involuntary bankruptcy petition, the parties' relationship and their abilities to act became subject to the provisions of the Bankruptcy Code.  It is within the framework of the Bankruptcy Code that these parties must now operate.  Section 362(a)(2) is clear.  Aquila is prohibited from enforcing a prepetition judgment against the Debtor or property of the estate after the automatic stay goes into effect unless the stay is lifted.  Based on the foregoing, Aquila's Motion is DENIED in part and GRANTED in part.  A separate order will be issued in conjunction with this Memorandum Decision.

----------------------------------------END OF DOCUMENT----------------------------------------

---

[12]   *Jenkins v. Hodes (In re Hodes)*, 402 F.3d 1005, 1009 (10th Cir. 2005) (petitioning creditors filed a motion, not an adversary proceeding, to stop the construction of a home and to restrict the putative debtors' use of deposit funds).  Similarly in this case, Aquila filed a motion rather than an adversary proceeding to attempt to stop the Debtor's transfer of its assets and to restrict further transfers of its assets without court order after notice and a hearing.

_____ooo0ooo_____

## SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION DENYING IN PART AND GRANTING IN PART MOTION OF AQUILA, INC. FOR ORDER PRESERVING AND PROTECTING ASSETS OF BANKRUPTCY ESTATE AND REQUESTING NOTICE AND HEARING IN CONNECTION WITH DEBTOR'S PURPORTED SALE OF SUBSTANTIALLY ALL OPERATING ASSETS TO A RELATED ENTITY** will be effected through the Bankruptcy Noticing Center to each party listed below and to the MATRIX:

Paul James Toscano
10 Exchange Place
Suite 614
Salt Lake City, UT 84111
   *Debtor's Counsel*

Russell S. Walker
Woodbury & Kesler
265 East 100 South
Suite 300
Salt Lake City, UT 84111
   *Debtor's Counsel*

Keith A. Kelly
Steven W. Call
Steve Strong
Ray Quinney & Nebeker, P.C.
36 South State St., Suite 1400
P.O. Box 45385
Salt Lake City, UT 84145-0385
   *Counsel for Aquila, Inc.*

Conrad H. Johansen
Tyler Foutz
Olsen Skoubye & Nielson
999 East Murray-Holladay Road
Suite 200
Salt Lake City, UT 84117
   *Counsel for Owell Precast, LLC*

John T. Morgan
US Trustees Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, Ut 84111

David E. Leta
Snell & Wilmer
15 West South Temple
Suite 1200
Beneficial Tower
Salt Lake City, UT 84101-1547

F. Mark Hansen
F. Mark Hansen, P.C.
431 North 1300 West
Salt Lake City, UT 84116
   *Counsel for Standard Industries, Inc.*

ORDER SIGNED