**The below described is SIGNED.**

**Dated: September 28, 2009**



**JUDITH A. BOULDEN**
**U.S. Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number: 08-20105 |
| C. W. MINING COMPANY, *dba* Co-Op Mining Company, | Chapter 7 |
| Debtor. | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S OBJECTION TO ANR, INC.'S PROOF OF CLAIM NO. 27 AND TRUSTEE'S SECOND CLAIM FOR RELIEF AGAINST ANR, INC. IN ADVERSARY PROCEEDING #09-2248[1]**

On April 13, 2009, the Court entered its Order Establishing Bar Date and Documentation

Requirements for Cure Claims Relating to Executory Contracts and Unexpired Leases (Cure

Claims Bar Date Order) [docket #570].  The Cure Claims Bar Date Order set May 5, 2009 as the

bar date for filing cure claims and required, *inter alia*, "that each non-Debtor party to an

Executory Contract shall specify in its proof of claim the amount claimed by such party to be

required to cure any default within the meaning of 11 U.S.C. § 365(b)(1)(A) and to compensate

for any actual pecuniary loss claimed as a result of any default within the meaning of 11 U.S.C.

---

[1]      The Court consolidated these matters solely for purposes of discovery, motions, and trial.
Accordingly, these Findings of Fact and Conclusions of Law are being entered in both the main case and
adversary proceeding #09-2248.  Other than the caption, both documents are identical.

§ 365(b)(1)(B), presupposing an assumption of the Executory Contract as of June 11, 2009."

Both C.O.P. Coal Development Company (COP) and ANR, Inc. (ANR) filed timely cure claims

as Claims No. 26 and 27, respectively.

Upon request of the chapter 7 Trustee and on the basis that the claims were "largely

duplicative," the Court ordered on June 16, 2009 that the Trustee was authorized to combine his

objections to Claims No. 9, 26, and 27 into a single written objection [docket #693].[2]  After a

hearing on August 3, 2009 and by Order entered on August 12, 2009 [docket #835], the Court

ordered that the Trustee's Objection to C.O.P. Coal Development Company's Cure Claim Under

March 1997 Coal Operating Agreement (Claim No. 26) and C.O.P.'s Proof of Claim No. 9 and

ANR, Inc.'s Proof of Claim No. 27 [docket #680] would be combined for trial on September 15

and 17, 2009 with Claims for Relief 1 through 4 in the above-captioned adversary proceeding

#09-2248.[3]  The Court also indicated at the initial pretrial conference in this adversary proceeding

on August 31, 2009 that ANR's Motion for Partial Summary Judgment on ANR Lease, COP's

Motion for Partial Summary Judgment on Contract Documents, and COP's Motion for Partial

Summary Judgment on Deferred Royalties would not be set for separate oral argument but would

be considered as arguments in connection with the trial.

But the Court learned on September 14, 2009 at an initial pretrial conference in a separate

adversary proceeding that COP's counsel of record, F. Mark Hansen, was going to be indefinitely

unavailable apparently due to medical reasons.  As such, and based on the agreement of the

---

[2]     Claim No. 9 is COP's original proof of claim filed in this case.  In addition to the same substantive grounds upon which the Trustee objected to COP's cure claim (Claim No. 26), the Trustee also objected to Claim No. 9 on the basis that it was duplicative of Claim No. 26.

[3]     Claims for Relief 1 through 7 and 9 had previously been bifurcated for trial from the remaining Claims for Relief by Order entered on June 25, 2009 [adversary docket #8].  Claims for Relief 1, 3, and 4 relate specifically to COP, while Claim for Relief 2 relates specifically to ANR.

Trustee and ANR, the Court bifurcated and limited the issues for trial on September 15 and 17 to

only those issues affecting the validity or enforceability of certain documents alleged by ANR to

form the basis of its cure claim.  All issues related to Claims No. 9 and 26 of COP, as well as all

issues related to the actual dollar amount of any cure claim that ANR may have, were reserved

for trial at a later date.  And although the specific issues actually tried by the Trustee and ANR

varied somewhat from the issues asserted at the start of trial, those issues were indeed limited to

the validity or enforceability of documents allegedly supporting ANR's cure claim and will be

accordingly limited by the Court in making its ruling.

The Court has considered the evidence properly before it, assessed the credibility of the

witnesses, considered the arguments of counsel, and conducted an independent review of

applicable law.  Based on the foregoing, the Court makes the following findings of fact and

conclusions of law.[4]

## I.   JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157(a), and venue is appropriate

under 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A),

(B), and (O), and the Court may enter a final order.

---

[4]     These Findings of Fact and Conclusions of Law constitute the Court's findings of fact
and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this proceeding by
Federal Rules of Bankruptcy Procedure 9014 and 7052, and incorporates by reference all of the Court's
oral rulings made on the record during trial.  Any of the findings of fact herein are also deemed to be
conclusions of law and conclusions of law herein are also deemed to be findings of fact and shall be
equally binding as both.

## II.   FINDINGS OF FACT

The following findings of fact are established by admissions in the pleadings, by

stipulation of counsel, or through testimony or other evidence provided at trial.[5]

1.      COP and the Debtor entered into a Coal Operating Agreement in March 1997

(COP Operating Agreement) in which COP granted the Debtor "exclusive authority to operate

and control [certain tracts of land] for the term of 25 years . . . for purposes reasonably incident to

the mining and removal of coal . . . ."[6]

2.      ANR and Hiawatha Coal Company, Inc. (Hiawatha) entered into a Coal Mining

Lease in June 1997 (Hiawatha Lease) in which ANR granted Hiawatha " for the term of ten (10)

years . . . the right to, and use of [certain tracts of land] for purposes reasonably incident to the

mining and removal of coal . . . ."[7]

3.      Hiawatha had not met its diligence requirements on its federal coal leases with

ANR and was in danger by late 1999 of either losing those leases or having to pay advance

royalties.

4.      In late 1999 before that occurred, the Debtor began the application process with

the U.S. Department of the Interior's Bureau of Land Management (BLM) for amending its own

---

[5]      At the start of trial, the Court ruled in favor of the Trustee on a Motion in Limine as a
sanction against ANR for discovery abuse.  The Court excluded the original Agreement to Include
Property in LMU between COP, ANR, Hiawatha Coal Company, Inc. (Hiawatha), and the Debtor; the
expert report of Federal Forensic Associates, Inc.; and the expert testimony of Albert H. Lyter III.  The
Court also awarded fees to the Trustee in an amount to be substantiated at a later date.  These rulings are
incorporated herein and will also be embodied in a separate order.

[6]      Exh. B, p. 1 of ANR's Exh. 2.

[7]      ANR's Exh. 2, p. 3 (informally called "Exhibit A").

logical mining unit (LMU) pursuant to 43 C.F.R. § 3487.1 to include the Hiawatha Lease federal

and fee coal leases.

5.      ANR and the Debtor entered into a Coal Operating Agreement in September 1999

(ANR Operating Agreement) in which ANR granted the Debtor "exclusive authority to operate

and control [certain tracts of land] for the term of 25 years . . . for purposes reasonably incident to

the mining and removal of coal . . . ."[8]

6.      COP, ANR, Hiawatha, and the Debtor entered into an Agreement to Include

Property in LMU in September 1999 (LMU Agreement) in order to add the land leased by

Hiawatha from ANR under the Hiawatha Lease into the Debtor's existing logical mining unit

(LMU) on land leased from COP under the COP Operating Agreement.[9]

7.      The LMU Agreement refers to the Hiawatha Lease, the COP Operating

Agreement, and the ANR Operating Agreement as Exhibits A, B, and C, respectively.

8.      The LMU Agreement contains numerous automatic and cross-default provisions

as well as a provision for termination upon written notice.  *Inter alia*, the LMU Agreement

provides that termination of the LMU Agreement automatically terminates the ANR Operating

Agreement.

9.      The Debtor never mined any coal on lands covered by the ANR Operating

Agreement, and ANR has no prepetition claim against the Debtor under the ANR Operating

Agreement itself.  Any cure claim alleged by ANR against the Debtor would only arise because

of the LMU Agreement's cross-referencing and cross-defaulting with the ANR Operating

---

[8]     Exh. C, p. 1 of ANR's Exh. 2.

[9]     ANR's Exh. 2.

Agreement or because the ANR Operating Agreement is not otherwise severable from the LMU

Agreement.

10.    ANR contends, and the Trustee concedes, that the LMU Agreement terminated

through some mechanism no later than April 10, 2001.[10]

11.    Also on April 10, 2001, Hiawatha sent the Debtor a letter (Hiawatha Letter)

stating as follows: "We understand that ANR Company has authorized control of Federal Coal

Leases SL-025431, SL-069985, U-51923 and the Fee coal reserves within permit area C/007/011

by [the Debtor] for the purpose of including the leases in the Bear Canyon LMU.  Hiawatha Coal

Company, as permittee and operator of Utah Coal Permit C/007/011, which includes these coal

leases and fee areas within its boundaries, authorizes [the Debtor] to control and operate mining

activities within these leases.  Hiawatha Coal Company also authorizes surface access to these

leases, if and when necessary, for the purpose of conducting, supervising or administrating

mining activities within these leases under the approved coal permit."[11]

12.    The authorization described in the first sentence of the Hiawatha Letter could only

refer to the ANR Operating Agreement.

13.    The Debtor submitted a final version of an Application for a Logical Mining Unit

to the BLM no earlier than April 20, 2001 (LMU Amendment), and the BLM has still neither

approved nor denied the LMU Amendment.  The Debtor's current president, Charles Reynolds,

---

[10]    The Trustee asserted in the Second Claim for Relief in adversary proceeding #09-2248
and elsewhere that the LMU Agreement was a "fraud" and a "recent fabrication," but he abandoned this
position at trial in favor of the position articulated by ANR that the LMU Agreement simply terminated
no later than April 10, 2001.

[11]    Trustee's Exh. 2, Bates stamp BLM00265.

testified to his understanding that the final remaining hurdle was the BLM's request for

clarification as to the identity of the legal operator of the proposed LMU.

14.     Section 5.0 of the LMU Amendment indicates that "the mine is controlled or

operated by [the Debtor]," that all the coal reserves in the proposed LMU "will be mined as a

single mining operation," and that "Appendix C includes authorization from Hiawatha Coal

Company for [the Debtor] to control, access and operate [the referenced] leases within

[Hiawatha's] permit area."[12]

15.     The COP Operating Agreement and the ANR Operating Agreement, but not the

LMU Agreement or the Hiawatha Lease, were re-executed by the relevant parties after April 10,

2001 but before April 20, 2001.

16.     The COP Operating Agreement, the ANR Operating Agreement (and two

purported amendments from June 30, 2001 and April 2001), and the Hiawatha Letter were all

submitted to the BLM in connection with the LMU Amendment.  Neither the LMU Agreement

nor the Hiawatha Lease were ever submitted to the BLM or to the Utah Department of Natural

Resources' Division of Oil, Gas and Mining (DOGM).

17.     The president of COP and ANR, Joseph O. Kingston, testified at a Rule 2004

examination in September 2008 that ANR's sole asset was a ranch south of Malad, Idaho.  Mr.

Kingston testified that his failure to disclose ANR's coal land interests was due to confusion with

the name of another entity whose name he could not recall.

18.     ANR and the Debtor dispute whether and to what extent the Debtor or its

employees may have performed compliance work for Hiawatha; however, and despite Hiawatha

---

[12]      Trustee's Exh. 2, Bates stamp BLM00221.

president Elliot Finley's testimony at this trial, Mr. Finley has previously testified and the Court

has previously found in its Amended Memorandum Decision Denying COP Coal Development

Company's Motion to Require the Trustee to Assume or Reject Lease, and Granting Trustee's

Motion to Extend Time for Trustee to Assume or Reject Executory Contracts or Unexpired

Leases of the Debtor (Amended Memorandum Decision) [docket #588] that "[p]rior to June

2008, Hiawatha contracted with the Debtor to do its compliance work."[13]

19.     The ANR Operating Agreement provides that it "may be terminated" after 60

days' written notice of default provided by ANR to the Debtor,[14] but no such notice has ever been

provided.

### III.    CONCLUSIONS OF LAW

As narrowed and framed by ANR and the Trustee in closing arguments, the issue before

the Court is whether the ANR Operating Agreement, standing alone, still exists as an executory

contract that could potentially be assumed by the Trustee in connection with his Motion to

Assume Coal Operating Agreements and Certain Related Contracts filed on June 9, 2009 and set

for hearing beginning on November 16, 2009.  ANR admits that the Debtor owed ANR nothing

as of the petition date but argues that the Trustee's attempt to assume the ANR Operating

Agreement "resurrected" or "revived" the LMU Agreement due to its cross-default provisions

and because the ANR Operating Agreement is not otherwise severable from the LMU

Agreement.  The Trustee, on the other hand, urges the Court to conclude that the ANR Operating

---

[13]     Amended Memorandum Decision, p. 7.

[14]     Exh. C, ¶ 9 of ANR's Exh. 2.

Agreement, by itself as a separate agreement and free from the cross-default provisions of the

LMU Agreement, "is in full force and effect."

Based on the evidence presented at trial as contained in the Findings of Fact above, the

Court concludes that the ANR Operating Agreement is indeed a separate agreement that

remained in full force and effect as of the petition date.  The Court does not need to address the

question of severability because ANR itself insists that the LMU Agreement terminated no later

than April 10, 2001, which means that the ANR Operating Agreement also automatically and

simultaneously terminated.  But the parties thereafter re-executed the ANR Operating

Agreement, thus separately renewing and ratifying it and ultimately submitting it along with the

re-executed COP Operating Agreement and the Hiawatha Letter to the BLM in connection with

the LMU Amendment.  Although the LMU Agreement contains cross-default provisions that

incorporate the ANR Operating Agreement, the same is not true in reverse.  Accordingly, no

basis exists for resurrecting the terminated LMU Agreement simply because the ANR Operating

Agreement was renewed.

The evidence and argument make clear that the goal was to save the Hiawatha Lease

leases from either forfeiture or advance royalty payment requirements by whatever means

necessary, and all indications to DOGM and the BLM were that the Debtor was in control of and

was the operator of the lands covered by the Hiawatha Lease.  Charles Reynolds testified to his

understanding that the only thing holding up the LMU Amendment was a clarification as to the

identity of the legal operator of the proposed LMU, and 43 C.F.R. § 3487.1(c)(3) requires that

LMU applications include "[d]ocuments and related information supporting a finding of effective

control of the lands to be included in the LMU."  The parties' secret LMU Agreement and

Hiawatha Lease are simply inconsistent with their publically presented version of reality and the

apparent requirements for an LMU.[15]

The evidence also supports the conclusion that the ANR Operating Agreement was not

void upon its inception and did not otherwise terminate between the time of its re-execution and

the petition date.  The Hiawatha Lease did not grant exclusive rights to Hiawatha in contrast to

the exclusive rights granted to the Debtor under both the COP Operating Agreement and the

ANR Operating Agreement, so the ANR Operating Agreement was not void *ab initio* as an

invalid attempt to transfer rights that had already been transferred.  The witnesses testified that

the Debtor performed few or none of its obligations under the ANR Operating Agreement, but

Mr. Kingston's testimony was less than clear on this point and Mr. Finley's testimony was

inconsistent with his prior testimony and the Court's findings in its Amended Memorandum

Decision that Hiawatha contracted with the Debtor for its compliance work.  ANR never

provided the Debtor with any notice of default as required before termination of the ANR

Operating Agreement.  And there is no credible evidence of mutual abandonment of the ANR

Operating Agreement or breach by the Debtor; to the contrary, the LMU Amendment (including

the ANR Operating Agreement) accomplished precisely the stated goal of saving the Hiawatha

Lease leases from forfeiture or advance royalty payment requirements due to Hiawatha's lack of

diligence by simply rolling those leases into the Debtor's existing LMU.

---

[15]      43 C.F.R. § 3480.0-5(a)(19) defines an LMU as "an area of land in which the
recoverable coal reserves can be developed in an efficient, economical, and orderly manner as a unit with
due regard to conservation of recoverable coal reserves and other resources.  An LMU may consist of one
or more Federal leases and may include intervening or adjacent lands in which the United States does not
own the coal.  **All lands in an LMU shall be under the effective control of a single operator/lessee**, be
able to be developed and operated as a single operation, and be contiguous" (emphasis added).  Also, 43
C.F.R. § 3487.1(c)(5) requires LMU applications to include "[a]ny other information required by the
authorized officer."

Finally, as it relates to the Trustee's Objection to ANR's Claim No. 27, that claim is almost wholly duplicative of COP's Claim No. 26 and most of Claim No. 27 should be disallowed on that basis alone.  And, more fundamentally, ANR's claim does not even qualify as a "claim" under 11 U.S.C. § 101(5).  ANR has no "right to payment" from the Debtor.  Any rights to payment asserted in Claim No. 27 apparently run in favor of COP and/or Hiawatha.  On this alternative basis, Claim No. 27 should also be disallowed in its entirety.[16]

## IV.   CONCLUSION

Based upon the foregoing, the Court hereby determines as follows:

1.        Judgment is GRANTED on the Trustee's two specific prayers in the Second Claim for Relief that ANR's Claim No. 27 be disallowed in its entirety and that the LMU Agreement is "ineffective and nonbinding on this estate or any assignee of the Trustee under §§ 365 or 363."  Judgment on the sole remaining allegation in the Second Claim for Relief claiming that the LMU Agreement is "a fraud" is DENIED as moot.

2.        The Trustee's Objection to ANR's Claim No. 27 is SUSTAINED and ANR's Claim No. 27 is accordingly disallowed in its entirety.

3.        ANR's Motion for Partial Summary Judgment on ANR Lease is DENIED.

4.        The Court will issue a separate Order and Judgment to this effect.

-------------------------------------------------- END OF DOCUMENT -------------------------------------

---

[16]        *See, e.g.*, *In re Plunkett*, 191 B.R. 768, 775 (Bankr. E.D. Wis. 1995); *In re McCready*, 255 B.R. 834 (Bankr. M.D. Tenn. 1999); *U.S. v. Apex Oil Co., Inc.*, 438 F.Supp.2d 948 (S.D. Ill. 2006).

_____ooo0ooo_____
**SERVICE LIST**

Service of the foregoing **FINDINGS OF FACT AND CONCLUSIONS OF LAW ON TRUSTEE'S OBJECTION TO ANR, INC.'S PROOF OF CLAIM NO. 27 AND TRUSTEE'S SECOND CLAIM FOR RELIEF AGAINST ANR, INC. IN ADVERSARY PROCEEDING #09-2248** will be effected through the Bankruptcy Noticing Center to each party listed below.

Michael N. Zundel
James C. Swindler
**Prince Yeates & Geldzahler**
City Center 1, Suite 900
175 East 400 South
Salt Lake City, UT  84111
        *Counsel for Plaintiff*

David E. Kingston
3212 South State Street
Salt Lake City, UT  84115
        *Counsel for ANR, Inc.*

F. Mark Hansen
**F. Mark Hansen, P.C.**
431 North 1300 West
Salt Lake City, UT  84116
        *Counsel for COP et al.*

Kim R. Wilson
P. Matthew Cox
**Snow, Christensen & Martineau**
10 Exchange Place, Eleventh Floor
P.O. Box 45000
Salt Lake City, UT  84145
        *Counsel for COP et al.*

Peter W. Guyon
614 Newhouse Bldg.
10 Exchange Place
Salt Lake City, UT  84111
        *Counsel for Hiawatha*

Russell S. Walker
**Woodbury & Kesler**
265 East 100 South, Suite 300
Salt Lake City, UT  84111
        *Counsel for Debtor et al.*